# DEED OF EXECUTOR

I, Mark R. Houck, Executor of the Estate of Geraldine C. Houck, Deceased, by the power conferred in me by the said will, which grants to the said Executor "...full power of sale, incumbrance and conveyance of any or all of my property, both real and personal, wherever situated and however acquired...", and every other power, for one dollar and other good and valuable considerations, grant, with fiduciary covenants, to Charles F. Strong and Roseanna J. Strong, for their joint lives, with remainder in fee simple to the survivor of them, whose tax mailing address will be 230 Independence Dr., Chillicothe, Ohio 45601, the following described property:

### *SEE ATTACHED EXHIBIT A WHICH IS MADE A PART HEREOF BY REFERENCE*

Previous deed reference: Vol. 501, Pg. 662, Ross County, Ohio, Deed Records.

Parcel No.: 30-5191240.000

Property address: 230 Independence Dr., Chillicothe, Ohio 45601

Save and except from the above warranties, the taxes for the year 1998 and thereafter, which grantees hereby assume and agree to pay as part of the consideration for these premises.

In witness whereof, I have hereunto set my hand as such Executor this 14th day of December, 1998.

Signed and acknowledged
In the presence of:

ALEXA WESTER

John N. Kernel, III

Mark R. Houck, Executor
Geraldine C. Houck, Deceased

```
9800016094
Filed for Record in
ROSS COUNTY, OH
KATHY DUNN
On 12-16-1998 At 03:17:18 pm.
EX/SD             14.00
OR Volume  129 Page 1429 - 1430
```

**STATE OF FLORIDA, DADE COUNTY, ss:**

Personally appeared before me, the undersigned Notary Public in and for the State of Ohio, the above named Mark R. Houck as Executor of the Estate of Geraldine C. Houck, Deceased, and acknowledged the signing and execution of the foregoing instrument to be his voluntary act and deed for the uses and purposes therein set forth.

In witness whereof, I have hereunto set my hand this 14th day of December, 1998.

Nancy L. Wilson
Notary Public, State of Florida

This instrument prepared by Cutright & Cutright, Attorneys at Law, 72 West Second St., Chillicothe, OH 45601



OFFICIAL NOTARY SEAL
NANCY L WILSON
COMMISSION NUMBER
CC731984
MY COMMISSION EXPIRES
APR. 8,2002

STEPHEN A. NEAL, County Auditor

Instrument          Volume Page
9800016094  OR      129  1429

Exhibit A.

*Situated in the City of Chillicothe*

Apartment Unit A of building No. 5 (also known as 230
Independence Drive), including the exclusive use of garage space
designated 4-D, The Governor's Place Condominium, Phase III, a
condominium, according to that certain Declaration of Condominium
recorded in Deed Book 396, Page 422, and condominium Record 1,
Page  83 of the Public Records of Ross County, Ohio; as amended,
from time to time, and filed with the Public Records of Ross
County, Ohio, as follows:

Addendum, recorded in Deed Book 401, Page 267 and condominium
Record 1, Page 157;

Amendment, recorded in Deed Book 401, Page 663 and condominium
Record 1, Page 186, of the Public Records of Ross County, Ohio;

Amendment, recorded in Deed Book 405, Page 721, and condominium
Record 1, Page 192 (as re-recorded in Deed Book 406, Page 13 and
condominium Record 1, Page 199);

Amendment, recorded in Deed Book 410, Page 53, and Condominium
Record 1, Page 206.

Amendment, recorded in Deed Book 410, Page 76, and Condominium
Record 1, Page 229;

Together with all interest and right appurtenant thereto, but
Subject to the terms and provisions of the aforementioned
Declaration of condominium.

Address: 230  Independence Drive
         Chillicothe,Ohio 45601

Parcel Number: 30-519240000

9800016094
BILL ALLYN
BOX

ORIGINAL

# NOTE

February 7, 2002          CIRCLEVILLE                                    OHIO
[Date]                               [City]

230 INDEPENDENCE DRIVE, CHILLICOTHE, OH  45601
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $       136,000.00       (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is
**LOAN STAR MORTGAGE, INC.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled
to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate
of        **6.7500** %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of
this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  **1st**       day of each month beginning on  **April 1, 2002**            . I will
make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before
Principal. If, on  **March 1, 2032**                , I still owe amounts under this Note, I will pay those amounts in full on
that date, which is called the "Maturity Date."

I will make my monthly payments at  **4700 ASHWOOD DRIVE**
**CINCINNATI, OHIO  45241**                                 or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $        **882.09** .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment
as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to
the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the
Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the
Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP -5N (0005).01              Form 3200 1/01
     VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3                              Initials:

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  **Fifteen**    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    **5.0000**   % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all  the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described  above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to  be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in  this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.



Form 3200 1/01

Initials:

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
CHARLES F. STRONG                -Borrower

_____ (Seal)
ROSEANNA J. STRONG               -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

PAY TO THE ORDER OF FLAGSTAR BANK, FSB
WITHOUT RECOURSE.

*[Sign Original Only]*

THIS 7th  DAY OF February    , 2002
LOAN STAR MORTGAGE, INC.

By: _____
    RICK McDONALD
    V.P.

-5N (0005).01              Page 3 of 3                    Form 3200 1/01



JPMorgan Chase Bank, N.A. sbmt Chase Home

Finance, LLC by Seterus, Inc., attorney in fact

PAY TO THE ORDER OF
WITHOUT RECOURSE

FLAGSTAR BANK, FSB

ORIGINAL

## NOTE ALLONGE

Loan Number: ████████

Borrower Name: Charles F. Strong and Roseanna J. Strong

Original Loan Amount: $136,000.00

Original Lender: Loan Star Mortgage, Inc.

Without recourse, and without warranty, guaranty, or other obligations of any nature
whatsoever.

Pay to the order of (payee):

    Federal National Mortgage Association

    JPMorgan Chase Bank, N.A. sbmt Chase Home Finance, LLC by Seterus, Inc., its
attorney in fact

By: *Cathy Bobzien*
    Cathy Bobzien
    Loan Administration AVP

ORIGINAL

## NOTE ALLONGE

Loan Number: ████████

Borrower Name: Charles F. Strong and Roseanna J. Strong

Original Loan Amount: $136,000.00

Original Lender: Loan Star Mortgage, Inc.

Without recourse, and without warranty, guaranty, or other obligations of any nature whatsoever.

Pay to the order of (payee):

Federal National Mortgage Association by Seterus, Inc., its attorney in fact

By: *Cathy Bobzien*
Cathy Bobzien
Loan Administration AVP

Instrument        Volume Page
200200002234 OR     202 1823

Return To:

200200002234
Filed for Record in
ROSS COUNTY, OH
KATHY DUNN
02-12-2002 02:04 pm.
MTG                    82.00
OR Volume  202 Page 1823 - 1841

——————————— [Space Above This Line For Recording Data] ———————————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

(A) "Security Instrument" means this document, which is dated **February 7, 2002**
together with all Riders to this document.
(B) "Borrower" is
**CHARLES F. STRONG AND ROSEANNA J. STRONG, HUSBAND AND WIFE**

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is
**LOAN STAR MORTGAGE, INC.**
Lender is a **CORPORATION**
organized and existing under the laws of **THE STATE OF OHIO**

OHIO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3036 1/01

-6(OH) (0005)
Page 1 of 15          Initials 
    VMP MORTGAGE FORMS - (800)521-7291

Lender's address is **4700 ASHWOOD DRIVE
CINCINNATI, OHIO 45241**
Lender is the mortgagee under this Security Instrument.
**(D)** "**Note**" means the promissory note signed by Borrower and dated **February 7, 2002**
The Note states that Borrower owes Lender **One Hundred Thirty-Six Thousand and No/100**
------------------------------------------------------------- Dollars
(U.S. $     **136,000.00**     ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **March 1, 2032**                      .
**(E)** "**Property**" means the property that is described below under the heading "Transfer of Rights in the
Property."
**(F)** "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(G)** "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☒ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(H)** "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(I)** "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(J)** "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(K)** "**Escrow Items**" means those items that are described in Section 3.
**(L)** "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property;
(iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or
condition of the Property.
**(M)** "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(N)** "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(O)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time,
or any additional or successor legislation or regulation that governs the same subject matter. As used in this
Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a
"federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan"
under RESPA.



-6(OH) (0005)                           Page 2 of 15                        Initials _____          Form 3036  1/01

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the **COUNTY** of **ROSS** :
           [Type of Recording Jurisdiction]                            [Name of Recording Jurisdiction]

See attached Exhibit "A"

Parcel ID Number:   30-5191240.000
**230 INDEPENDENCE DRIVE**
**CHILLICOTHE**
("Property Address"):

which currently has the address of
[Street]
[City], Ohio **45601**   [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this

-6(OH) (0005)             Page 3 of 15                              Form 3036  1/01

Instrument
200200002234 OR    Volume Page
202 1826

Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of

Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or/more of the actions set forth above in this Section 4.

Case 2:22-bk-50930 Doc 22-1 Filed 05/12/22 Entered 05/12/22 15:49:01 Desc
Exhibit Loan Documents Page 14 of 49
Instrument
200266002234 OR
Volume Page
202 1828

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

-6(OH) (0005)                           Page 6 of 15          Initials          Form 3036  1/01

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to; entering the

Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

-6(OH) (0005)                    Page 8 of 15                    Form 3036 1/01

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy

-6(OH) (0005)                           Page 9 of 15          Initials:                Form 3036  1/01

including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

-6(OH) (0005)                    Page 10 of 15                    Form 3036   1/01

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other

-6(OH) (0005)                    Page 11 of 15                    Form 3036  1/01

than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Certain Other Advances.** In addition to any other sum secured hereby, this Security Instrument shall also secure the unpaid principal balance of, plus accrued interest on, any amount of money loaned, advanced or paid by Lender to or for the account and benefit of Borrower, after this Security Instrument is delivered to and filed with the Recorder's Office, **ROSS**
County, Ohio, for recording. Lender may make such advances in order to pay any real estate taxes and assessments, insurance premiums plus all other costs and expenses incurred in connection with the operation, protection or preservation of the Property, including to cure Borrower's defaults by making any such payments which Borrower should have paid as provided in this Security Instrument, it being intended by this Section 24 to acknowledge, affirm and comply with the provision of Section 5301.233 of the Revised Code of Ohio.

Instrument
200420002234 OR

Volume Page
202 1836

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____

_____ (Seal)
CHARLES F. STRONG          -Borrower

_____ (Seal)
ROSEANNA J. STRONG         -Borrower

_____ (Seal)        _____ (Seal)
-Borrower                                -Borrower

_____ (Seal)        _____ (Seal)
-Borrower                                -Borrower

_____ (Seal)        _____ (Seal)
-Borrower                                -Borrower



-6(OH) (0005)                Page 14 of 15              Form 3036  1/01

STATE OF OHIO, PICKAWAY                                    County ss:

    On this **7th**     day of **February, 2002**    , before me, a Notary Public in
and for said County and State, personally appeared
**CHARLES F. STRONG and ROSEANNA J. STRONG** ,HUSBAND AND WIFE

the individual(s) who executed the foregoing instrument and acknowledged that he/she/they did examine and
read the same and did sign the foregoing instrument, and that the same is his/her/their free act and deed.
    IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

My Commission Expires:

                                          Notary Public



              TAMMY L. DECK
         Notary Public, State of Ohio
         My Commission Expires          This instrument was prepared by
           January 22, 2007     **LOAN STAR MORTGAGE, INC.**

-6(OH) (0005)                    Page 15 of 15                              Form 3036  1/01

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this **7th** day of **February, 2002**,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to
**LOAN STAR MORTGAGE, INC.**

(the
"Lender") of the same date and covering the Property described in the Security Instrument and located at:

**230 INDEPENDENCE DRIVE, CHILLICOTHE, OH 45601**

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a
condominium project known as:
**GOVERNORS PLACE CONDOMINIUM**

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium
Project (the "Owners Association") holds title to property for the benefit or use of its members or
shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds
and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the
Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any
other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other
equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to
the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender
and which provides insurance coverage in the amounts (including deductible levels), for the periods, and
against loss by fire, hazards included within the term "extended coverage," and any other hazards, including,
but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the

**MULTISTATE CONDOMINIUM RIDER**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

-8R (0008)   Form 3140 1/01
Page 1 of 3   Initials
VMP MORTGAGE FORMS - (800)521-7291

provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

-8R (0008)                           Page 2 of 3                  Initials                    Form 3140 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this
Condominium Rider.

_____ (Seal)          _____ (Seal)
CHARLES F. STRONG          -Borrower          ROSEANNA J. STRONG          -Borrower

_____ (Seal)          _____ (Seal)
                           -Borrower                                     -Borrower

_____ (Seal)          _____ (Seal)
                           -Borrower                                     -Borrower

_____ (Seal)          _____ (Seal)
                           -Borrower                                     -Borrower

*VMP®*-8R (0008)                    Page 3 of 3                    Form 3140 1/01

EXHIBIT A

LEGAL DESCRIPTION

File Number  02-045

Situated  in  the  City  of  Chillicothe, County of Ross and State of Ohio:

Apartment  Unit A of building No. 5 (also known as 230 Independence Drive),
including  the exclusive use of garage space designated 4-D, The Governor's
Place  Condominium,  Phase  III,  a  condominium, according to that certain
declaration  of  Condominium  recorded  in  Deed  Book  396,  Page 422, and
condominium  Record  1, Page 83 of the Public Records of Ross County, Ohio;
as amended,  from  time  to time, and filed with the Public Records of Ross
County, Ohio, as follows:

Addendum,  recorded  in  Deed  Book 401, Page 267 and condominium Record 1,
Page 157;

Amendment,  recorded  in  Deed Book 401, Page 663 and condominium Record 1,
Page 186, of the Public Records of Ross County, Ohio;

Amendment,  recorded  in Deed Book 405, Page 721, and condominium Record 1,
Page  192  (as re-recorded in Deed Book 406, Page 13 and condominium Record
1, Page 199);

Amendment,  recorded  in  Deed Book 410, Page 53, and Condominium Record 1,
Page 206.

Amendment,  recorded  in  Deed Book 410, Page 76, and Condominium Record 1,
Page 229;

Together  with  all  interest and right appurtenant thereto, but Subject to
the terms  and provisions of the aforementioned Declaration of Condominium.

Address:  230 Independence Drive
          Chillicothe, Ohio 45601

Parcel Number:  30-51924000

200200002234
CITIZENS LAND TITLE CO
233 S SCIOTO ST
CIRCLEVILLE, OH 43113

END OF LEGAL DESCRIPTION

1 of 1



## RECORDED DOCUMENT COVERSHEET

Order Number:

Reference Number:

Client Name: **SN SERVICING CORP**
Product Type: **MOD REC SVC**
State: **OH**
County: **ROSS**
Re: **STRONG**

**Valued Client,**

**Attached is a copy of the recorded document submitted.**
**Please do not hesitate to contact us should you have any questions.**

**Thank you for selecting First American Mortgage Solutions.**
**We sincerely appreciate your business!**

Recording Team
Default Title Operations (DTO)
3 First American Way
Santa Ana, CA 92707

E-mail: lmts.recordingcustservice@firstam.com
Toll-Free: 1-866-243-8755
Online: www.firstamericannavigator.com (use the "ADD NOTE" feature)

202100011027      12/08/2021  9:16AM
Filed for Record in ROSS County, OH
Kathy Dunn, Recorder  Rec Fees: $82.00
MDAG    OR Vol 556 Pgs 4681 - 4685
ERECORDING

**After Recording Return To:**
SN Servicing Corporation
323 5th Street
Eureka, California 95501
Attn: Collateral Department

This document was prepared by Leanna Cowdrey

## MODIFICATION AGREEMENT

BEFORE the undersigned Notaries Public, in and for the respective county/parish and state listed hereafter, came and appeared the following parties:

CHARLES F. STRONG and ROSEANNA J. STRONG hereinafter referred to as ("BORROWER(S)") and SN Servicing Corporation, servicing agent for U.S. Bank Trust National Association, as Trustee of the Lodge Series III Trust with a mailing address of 323 5th Street, Eureka, California 95501, as ("LENDER")

Who declared that they are entering into this Agreement as follows:

Borrower(s) acknowledges that as of the date stated herein, the Lender is the holder by Assignment of certain Note ("NOTE") and Mortgage, Deed of Trust, Security Deed ("SECURITY INSTRUMENT") made by CHARLES F. STRONG and ROSEANNA J. STRONG in favor of LOAN STAR MORTGAGE, INC. in the original principal amount of $136,000.00 together with an interest rate of 6.7500% per annum. The indebtedness secured by this Security Instrument is evidenced by certain Note dated February 07, 2002, with an interest rate of 6.7500% payable in monthly installments to the order of Lender.

This Modification Agreement ("AGREEMENT"), made November 5, 2021 between CHARLES F. STRONG and ROSEANNA J. STRONG ("BORROWER") and U.S. Bank Trust National Association, as Trustee of the Lodge Series III Trust ("LENDER"), amends and supplements (1) the Mortgage, Deed of Trust, Security Deed ("SECURITY INSTRUMENT"), dated February 07, 2002, and recorded on February 12, 2002 Instrument #: 200200002234, Volume: 202, Page: 1823- 1841 with the Deed of Records of ROSS County, OH, and (2) the Note ("NOTE"), bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the ("PROPERTY"), located at 230 INDEPENDENCE DRIVE, CHILLICOTHE, OH, 45601, the real property described being set forth as follows as described in the attached "Exhibit A".

The Borrower has requested that the Lender modify the terms of the Note and Security Instrument. The Lender has agreed to do so pursuant to the terms and conditions stated in the Modification. The Borrower and the Lender agree to modify the terms of the Note and Security Instrument as follows. The Borrower and the Lender agree that the provisions of this modification supersede and replace any inconsistent provisions set forth in the Note and Security Instrument:

1) As of November 5, 2021 the unpaid principal balance under the Note and the Security Instrument is U.S. $108,995.06 consisting of the amounts loaned to Borrower, not including interest or advances.

2) The Borrower acknowledges that the Lender has incurred, paid or otherwise advanced taxes and or insurance premiums and other expenses necessary to protect and preserve its interest pursuant to the Note and Security Instrument, and that such costs and expenses equal to the total amount of $1,939.59. The following are the costs and expenses advanced on the Borrower's behalf:

        a.  Accrued & Unpaid Interest     $1,759.80
        b.  Escrow Shortage Advanced    $179.79

3) The Borrower agrees that the amount that has been advanced by the Lender will be added to the unpaid principal balance payable under the Note and Security Instrument. Therefore, the unpaid principal balance has been **increased** to $110,934.65. The Borrower agrees to accept a modified payment schedule to repay the unpaid principal balance.

4) The Borrower accepts the modification and agrees to pay the increased unpaid principal balance, together with interest, late charges, and advances. The following terms have been modified:

        a.  Interest will be charged on the Unpaid Principal Balance at the yearly rate of 4.50%, from October 01, 2021.

        b.  Interest under this Modification shall be an Arrears method and calculated on a 360-day year consisting of twelve 30-day months.

        c.  Borrower shall make monthly payments of principal and interest of U.S. $562.09, beginning on November 01, 2021, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full.

        d.  Monthly payments are amortized 360 months due and payable in 360 months.

        e.  The principal and interest payment does not include the monthly escrow constant of $151.53. The monthly escrow constant is subject to change at each analysis.

f.  Total payment amount is $713.62.

g.  Lender will bring the loan due for the November 01, 2021 payment.

h.  If on October 01, 2051 ("REVISED MATURITY DATE"), there remains an amount due under the Note and the Security Instrument, as amended by this Agreement, this amount shall be due in full on the Maturity Date.

i.  Borrower will make such payments at such place as Lender may require.

5)  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Note and Security Instrument.  The following terms and provisions are modified and amended as of the date specified in paragraph No. 1 above:

a.  all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note are waived.  By executing this Agreement, Borrower agrees to make the same monthly payments of principal and interest as stated herein above for the remaining term of the Note.

b.  all terms and provisions of any adjustable rate rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions providing for an adjustment in the interest rate are changed to set the rate as stated herein.

6)  Borrower(s) agrees that in the event of a default under the terms of this Agreement, the Lender may exercise all rights and remedies provided in the Note and Security Instrument and as provided by applicable law, including any judicial or non-judicial foreclosure or other proceeding.

7)  Borrower(s) hereby consents and agrees that in the event suit is instituted, the Lender may enforce any and all of the provisions of the Note and Security Instrument and proceed immediately to collect the full amount of principal, interest, attorney fees and costs as acknowledged herein.

8)  In the event any of the provisions contained hereinabove are determined to be unenforceable by a court of competent jurisdiction and it is necessary to proceed to trial, then Borrower irrevocably waives all rights to trial by jury in any action, proceeding or counterclaim arising out of or relating to this Agreement or the obligations modified thereby.

9)  In addition to the events of default contained in the Note and Security Instrument it will be an event of default under this Agreement if the Borrower(s) fails to pay the modified payment schedule according to the terms set forth hereinabove.

10) For and in consideration of the forbearance and benefits received herein, Borrower(s) hereby releases and forever discharges the Lender, and all previous holders of the hereinabove described Note from any and all claims of whatever nature and kind arising out of all transactions related to said Note.

11) The Lender and Borrower(s) agrees that all provisions of the Security Instrument and any other collateral documents not specifically mentioned herein shall remain in full force and effect, and Borrower(s) shall comply with all covenants, agreements and requirements of the security instrument.

12) In the event that any one or more of the provisions contained in this Agreement or in the Loan Documents shall for any reason be held invalid, illegal, or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions of the Loan Documents.

13) Nothing in this Agreement shall be understood or construed to be a satisfaction, novation, remission, or release in whole or in part of the Note, Mortgage, and security documents.  Except as otherwise specifically provided in this Agreement, the Note, Mortgage and Security Instrument will remain unchanged and Borrower(s) will be bound by and obligated to comply with all of the terms and provisions thereof, as amended by this Agreement.

14) On the loan payments due date, default will occur if the payment is not received within the allowable grace period (if applicable).

15) If the Borrower has, since inception of the loan but prior to this Agreement, received a discharge in a Chapter 7 Bankruptcy, and there having been no valid reaffirmation agreement of the underlying debt, by entering into this agreement, the Lender is not attempting to re-establish any personal liability for the underlying debt. Acceptance of the modification shall not make the Borrower personally liable for the debt. Any payments received will reduce the amount due under this Agreement.

LOAN MODIFICATION AGREEMENT                                    (page 2 of 5)
Main Office NMLS #5985, Branch Office NMLS #9785
Revised 07-27-2020

16) Notwithstanding anything to the contrary contained in the Loan Modification Agreement, the parties hereto acknowledge the effect of a discharge in bankruptcy that has been granted to Borrower(s) prior to the execution hereof and that the Lender may not pursue the Borrower(s) for personal liability. However, the parties acknowledge that the Lender retains certain rights, including but not limited to the right to foreclose its lien under appropriate circumstances. The parties agree that the consideration for this agreement is the Lender's forbearance from presently exercising its right and pursuing its remedies under the Security Instrument as a result of the Borrower(s) default of its obligation there under. Nothing herein shall be construed to be an attempt to collect against Borrower(s) personally or an attempt to revive personal liability.

17) This Agreement shall be binding upon and inure to the benefit of, the Borrower and the Lender and their respective heirs, legal representatives, successors and assigns.

Dated: _Nov. 16, 2021_                    Dated: _Nov. 16, 2021_

I acknowledge and agree to the modification to the Note and Security Instrument set forth above.

WITNESSES:                                 BORROWER(S):

_Marissa M Saxton_                         _Charles F Strong_
                                           CHARLES F. STRONG)

_Kellie A. Snyder_                         _Roseanna J Strong_
                                           ROSEANNA J. STRONG

## ACKNOWLEDGEMENT

STATE OF _Ohio_                )
                               )ss.
COUNTY OF _Ross_               )

On _Nov. 16, 2021_ before me, _Charles F Strong & Karen K. Roseanna J Strong_ Saxton, Notary Public, personally appeared _Charles F Strong & Roseanna J Strong_ _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity(ies) upon which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _Ohio_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

KAREN K SAXTON
Notary Public - State of Ohio
Commission Expires Mar 18, 2026

_Karen K Saxton_
Notary Public
My Comm. Expires

## ACKNOWLEDGEMENT

STATE OF _Ohio_                )
                               )ss.
COUNTY OF _Ross_               )

On _Nov. 16, 2021_ before me, _Karen K Saxton_, Notary Public, personally appeared _Marissa Saxton + Kellie A. Snyder_ _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity(ies) upon which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _Ohio_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.
KAREN K SAXTON
Notary Public - State of Ohio
Commission Expires Mar 18, 2026

_Karen K Saxton_
Notary Public
My Comm. Expires

LOAN MODIFICATION AGREEMENT
Main Office NMLS #5985, Branch Office NMLS #9785
Revised 07-27-2020

(page 3 of 5)

**WITNESSES:**

| | U.S. Bank Trust National Association, as Trustee of the Lodge Series III Trust |
|---|---|
| | BY SN SERVICING CORPORATION, ITS SERVICING AGENT |
| | BY: |
| | JEFF HARRISON |
| | ITS: AUTHORIZED AGENT |
| | NMLS: 1314656 |
| | DATE: NOV 29 2021 |

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

## ACKNOWLEDGEMENT

STATE OF CALIFORNIA

)ss.

COUNTY OF HUMBOLDT

On _NOV. 29_, 2021 before me, _Kate Ronda Conley_, Notary Public, personally appeared ___JEFF HARRISON___, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

[Seal]

KATE RONDA CONLEY
Notary Public - California
Humboldt County
Commission # 2379247
My Comm. Expires Oct 20, 2025

Notary Public _Kate Ronda Conley_
My Comm. Expires: _OCT 20 2025_



## EXHIBIT "A"

File Number  02-045

Situated in the City of Chillicothe, County of Ross and State of Ohio:

Apartment  Unit A of building No. 5 (also known as 230 Independence Drive),
including the exclusive use of garage space designated 4-D, The Governor's
Place Condominium, Phase III, a condominium, according to that certain
declaration of Condominium recorded in Deed Book 396, Page 422, and
condominium Record 1, Page 83 of the Public Records of Ross County, Ohio;
as amended, from time to time, and filed with the Public Records of Ross
County, Ohio, as follows:

Addendum, recorded in Deed Book 401, Page 267 and condominium Record 1,
Page 157;

Amendment, recorded in Deed Book 401, Page 663 and condominium Record 1,
Page 186, of the Public Records of Ross County, Ohio;

Amendment, recorded in Deed Book 405, Page 721, and condominium Record 1,
Page 192 (as re-recorded in Deed Book 406, Page 13 and condominium Record
1, Page 199);

Amendment, recorded in Deed Book 410, Page 53, and Condominium Record 1,
Page 206.

Amendment, recorded in Deed Book 410, Page 76, and Condominium Record 1,
Page 229;

Together with all interest and right appurtenant thereto, but Subject to
the terms and provisions of the aforementioned Declaration of Condominium.

Address:  230 Independence Drive
          Chillicothe, Ohio 45601

Parcel Number:  30-51924000

First American Title Insurance Company
3 FIRST AMERICAN WAY
SANTA ANA, CA 92707-6913

Inst #202100011027                    (page 5 of 5)

LOAN MODIFICATION AGREEMENT
Main Office NMLS #5985, Branch Office NMLS #9785
Revised 07-27-2020

200200002363
Filed for Record in
ROSS COUNTY, OH
KATHY DUNN
02-14-2002 03:04 pm.
ASSGN          16.00
OR Volume  202 Page 2359 - 2360

*M/G Official Records Vol. 202*
*Pg. 1823*

| Instrument | Volume | Page |
|---|---|---|
| 200200002363 OR | 202 | 2359 |

AND WHEN RECORDED MAIL TO
FLAGSTAR BANK, FSB
5151 CORPORATE DRIVE
TROY, MICHIGAN 48098

—————————————————— [Space Above This Line For Recording Data] ——————

PREPARED BY:
LOAN STAR MORTGAGE, INC.

4700 ASHWOOD DRIVE
CINCINNATI, OHIO  45241

## Corporation Assignment of Real Estate Mortgage/Deed of Trust

**FOR VALUE RECEIVED**, the undersigned hereby grants, assigns and transfers to
  FLAGSTAR BANK, FSB
  5151 CORPORATE DRIVE
  TROY, MICHIGAN 48098
all the rights, title and interest of undersigned in and to that certain Real Estate Mortgage/Deed
of Trust dated **February 7, 2002**                          , executed by
  CHARLES F. STRONG AND ROSEANNA J. STRONG, HUSBAND AND WIFE

to **LOAN STAR MORTGAGE, INC.**
organized under the laws of   **THE STATE OF OHIO**               and whose principal place
of business is  **4700 ASHWOOD DRIVE**
  **CINCINNATI, OHIO  45241**
and recorded in  *OR 202*          page(s) *1823*   **ROSS**            County Records.
State of  **OHIO**                  described hereinafter as follows:
Land situated in the                          ,   **ROSS**              County,
**OHIO**
**PLEASE SEE ATTACHED EXHIBIT "A"**

Parcel #
Commonly known as: **230 INDEPENDENCE DRIVE, CHILLICOTHE, OH  45601**
**Together** with the note or notes therein described or referred to, the money due and to become
due thereon with interest, and all rights accrued or to accrue under said Real Estate
Mortgage/Deed of Trust.

STATE OF  *Ohio*
COUNTY OF  *Hamilton*

On *2/13/02*          before me, the            **LOAN STAR MORTGAGE, INC.**
   (Date of Execution)
undersigned, a Notary Public in and for said
County and State, personally appeared            By: *Rusty S. Donohou*
   *Rusty Donohou*                     Its: *PRESIDENT*
known to me to be the *President*
and  *Rick McDonald*                    By:
known to me to be *Vice President*            Its: *Rick McDonald*
of the corporation herein which executed the        *Vice President*
within instrument, that said instrument was        Witness:
signed on behalf of said corporation pursuant to
its by-laws or a resolution of its Board of
Directors and that he/she acknowledges said
instrument to be the free act and deed of said        *John Flagstad*
corporation.

Notary Public  *Hamilton*
                          County,
My Commission *BONNIE LEACH*        *Bonnie Leach*
             Notary Public, State of Ohio
             My Commission Expires May 8, 2...

Instrument                  Volume Page
200200002363 OR             202  2360

EXHIBIT A

LEGAL DESCRIPTION

File Number  02-045

Situated  in  the  City  of  Chillicothe,  County of Ross and State of Ohio:

Apartment  Unit A of building No. 5 (also known as 230 Independence Drive),
including  the exclusive use of garage space designated 4-D, The Governor's
Place  Condominium,  Phase  III,  a  condominium, according to that certain
declaration  of  Condominium  recorded  in Deed  Book  396,  Page 422, and
condominium  Record  1,  Page 83 of the Public Records of Ross County, Ohio;
as amended,  from  time  to time, and filed with the Public Records of Ross
County, Ohio, as follows:

Addendum,  recorded  in  Deed  Book 401, Page 267 and condominium Record 1,
Page 157;

Amendment,  recorded  in  Deed Book 401, Page 663 and condominium Record 1,
Page 186, of the Public Records of Ross County, Ohio;

Amendment,  recorded  in Deed Book 405, Page 721, and condominium Record 1,
Page  192  (as re-recorded in Deed Book 406, Page 13 and condominium Record
1, Page 199);

Amendment,  recorded  in  Deed Book 410, Page 53, and Condominium Record 1,
Page 206.

Amendment,  recorded  in  Deed Book 410, Page 76, and Condominium Record 1,
Page 229;

Together  with  all  interest and right appurtenant thereto, but Subject to
the terms  and provisions of the aforementioned Declaration of Condominium.

Address:  230 Independence Drive
          Chillicothe, Ohio 45601

Parcel Number:  30-51924000

200200002363
CITIZENS LAND TITLE CO
233 S SCIOTO ST
CIRCLEVILLE, OH 43113

END OF LEGAL DESCRIPTION

Instrument 200200014737 OR    Volume Page
223    858

200200014737
Filed for Record in
ROSS COUNTY, OH
KATHY DUNN
10-28-2002 01:37 PM.
ASSGN    16.00
OR Volume  223 Page  858 - 858
M/E Official Records Vol. 202 pg 1823

PREPARED BY: SMI

RECORDING REQUESTED BY
/AFTER RECORDING RETURN TO:

Stewart Mortgage Information
Attn: Sherry Doza
P.O. Box 540817
Houston, Texas 77254-0817
Tel. (800) 795-5263

Pool: 633110

(Space Above this Line For Recorder's Use Only)

## ASSIGNMENT of MORTGAGE

STATE OF OHIO
COUNTY OF ROSS

KNOW ALL MEN BY THESE PRESENTS:

That FLAGSTAR BANK, FSB ('Assignor'), acting herein by and through a duly authorized officer, the owner and holder of one certain promissory note executed by CHARLES F. STRONG AND ROSEANNA J. STRONG ('Borrower(s)') secured by a Mortgage of even date therewith executed by Borrower(s) for the benefit of the holder of the said note, which was recorded on the lot(s), or parcel(s) of land described therein situated in the County of Ross, State of Ohio:

Recording Ref:  Book 202, Page No. 1823, Date of Mortgage 2/7/02
Loan Amount:   $136,000.00

For and in consideration of the sum of Ten and No/100 dollars ($10.00), and other good valuable and sufficient consideration paid, the receipt of which is hereby acknowledged, does hereby transfer and assign, set over and deliver unto MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (Assignee) all beneficial interest in and to title to said Mortgage, together with the note and all other liens against said property securing the payment thereof, and all title held by the undersigned in and to said land.

TO HAVE AND TO HOLD unto said Assignee said above described Mortgage and note, together with all and singular the liens, rights, equities, title and estate in said real estate therein described securing the payment thereof, or otherwise.

Effective the 1st day of September A.D. 2002 and executed this the 11th day of October A.D. 2002.

FLAGSTAR BANK, FSB

By: _____

Witness: _____
KIRSTIN BLAN

SHERRY DOZA
VICE PRESIDENT

200200014737
STEWART MORTGAGE INFORMATION
P O BOX 540817
HOUSTON, TX 77254-9935

Witness: _____
CONSTANCE BERNARD

THE STATE OF TEXAS
COUNTY OF HARRIS

On this the 11th day of October A.D. 2002, before me, a Notary Public, appeared SHERRY DOZA to me personally known, who being by me duly sworn, did say that (s)he is the VICE PRESIDENT of FLAGSTAR BANK, FSB, and that said instrument was signed on behalf of said corporation by authority of its Board of Directors, and said SHERRY DOZA acknowledged said instrument to be the free act and deed of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

_____

Assignee's Address:
P.O. BOX 2026
FLINT, MI 48501-2026

Assignor's Address:
5151 CORPORATE DRIVE
TROY, MI 48098


HELEN B. BOUDREAUX
NOTARY PUBLIC
STATE OF TEXAS
Comm. Exp. 03-12-2003

After recording please return to
Manley Deas Kochalski LLC
P.O. Box 165028
Columbus, OH 43216-5028
file number: 08-25207

Instrument          Volume Page
200800003651  DR    363 2071

## ASSIGNMENT

For valuable consideration, the receipt and sufficiency of which is hereby acknowledged, **Mortgage Electronic Registration Systems, Inc. ("Assignor"),** whose address is P.O. Box 2026, Flint, MI 48501-2026, does hereby transfer, convey, and assign unto **Chase Home Finance, LLC ("Assignee"),** whose address is c/o Chase Manhattan Mortgage Corporation, 3415 Vision Drive, Columbus, Ohio  43219, all of its right, title, and interest in and to that certain mortgage dated February 7, 2002 executed and delivered by **Charles F. Strong  and Roseanna J. Strong, husband and wife,** which mortgage was recorded on February 12, 2002 in Instrument # 200200002234 or Volume 202 Page 1823 in the Recorder's Office of Ross County, Ohio, together with the promissory note secured by such mortgage and all sums of money due and to become due on such promissory note.

The property encumbered by such mortgage is described as follows:  See Exhibit "A" for legal description.
Parcel No. 30-51924000.
Property Address:  230 Independence Dr, Chillicothe, OH 45601

The Recorder is hereby requested to cross-reference this Assignment to the recording reference of the mortgage hereinbefore described.

In witness whereof, Mortgage Electronic Registration Systems, Inc. has executed this Assignment this 24th day of April, 2008.

Mortgage Electronic Registration Systems, Inc. –

By _Christina Trowbridge_
                    Signature
Christina Trowbridge          VICE PRESIDENT
Print Name and Title

STATE OF _____**Ohio**_____ )
                                                        ) SS
COUNTY OF _____**Franklin**_____ )

Before me, a Notary Public, personally appeared Mortgage Electronic Registration Systems, Inc. (the "Company"), acting through _____Christina Trowbridge_____, its ____VICE PRESIDENT____, who acknowledged that he/she is authorized to sign this Assignment, that he/she signed the foregoing instrument on behalf of the Company by proper authority, and that the foregoing instrument is the act of the Company for the purposes stated in the instrument. In testimony whereof, I have hereunto subscribed my name and affixed my official seal on this 24th day of April, 2008.

_Karen O. Belcher_
          Notary Public

KAREN O BELCHER
Notary Public, State of Ohio
My Commission Expires on October 30, 2010

Prepared by: Manley, Deas, kochalski, LLC, P.O. Box 43216, Columbus, Ohio 43216
After Recording Return to: Manley, Deas, kochalski, LLC, P.O. Box 43216, Columbus, OH 43216

200800003651
Filed for Record in
ROSS COUNTY, OH
KATHY DUNN
04-30-2008 At 03:10 pm.
ASSGN          32.00
OR Volume  363 Page 2071 - 2072

Our File No.:  08-25207

M/E official Records vol. 202
pg. 1823

Instrument            Volume Page
200800003651 OR     363 2072

**EXHIBIT "A"**

Legal Description:

Situated in the City of Chillicothe, County of Ross and State of Ohio

Apartment Unit A of building No. 5 (also known as 230 Independence Drive) including the exclusive use of garage space designated 4-D, The Governor' Place Condominium, Phase III, a condominium, according to that certai declaration of Condominium recorded in Deed Book 396, Page 422, an condominium Record 1, Page 83 of the Public Records of Ross County, Ohio as amended, from time to time, and filed with the Public Records of Ros County, Ohio, as follows:

Addendum, recorded in Deed Book 401, Page 267 and condominium Record 1 Page 157;

Amendment, recorded in Deed Book 401, Page 663 and condominium Record 1 Page 186, of the Public Records of Ross County, Ohio;

Amendment, recorded in Deed Book 405, Page 721, and condominium Record 1 Page 192 (as re-recorded in Deed Book 406, Page 13 and condominium Recor 1, Page 199);

Amendment, recorded in Deed Book 410, Page 53, and Condominium Record 1 Page 206.

Amendment, recorded in Deed Book 410, Page 76, and Condominium Record 1 Page 229;

Together with all interest and right appurtenant thereto, but Subject t the terms and provisions of the aforementioned Declaration of Condominium

Address:   230 Independence Drive
           Chillicothe, Ohio 45601

Parcel Number:  30-51924000

200800003651
MANLEY DEAS & KOCHALSKI LLC
PO BOX 165028
COLUMBUS OH 43216-5028





BK:  465 PG: 405

```
201400008041
Filed for Record in
ROSS COUNTY, OH
KATHY DUNN, RECORDER
10-23-2014 At 01:08 pm.
ASSGN       48.00
OR Volume   465 Page 405 - 408
```

M/E O.R. Vol. 262  Pg. 1823

After recording return to:
**PEIRSONPATTERSON, LLP**
**ATTN: RECORDING DEPT.**
**13750 OMEGA ROAD**
**DALLAS, TX 75244-4505**

Parcel ID No.: 30-5191240.000

―――――――――    ――――――[Space Above This Line For Recording Data]

# OHIO ASSIGNMENT OF MORTGAGE

For Value Received, JPMorgan Chase Bank, N.A., S/B/M Chase Home Finance LLC, the undersigned holder of a Mortgage (herein "Assignor") does hereby grant, sell, assign, transfer and convey, unto **FEDERAL NATIONAL MORTGAGE ASSOCIATION, ITS SUCCESSORS OR ASSIGNS**, (herein "Assignee"), whose address is 14221 Dallas Parkway, Suite 100, Dallas, TX 75254, all its right, title and interest in and to a certain Mortgage dated February 7, 2002 and recorded on February 12, 2002, made and executed by **CHARLES F. STRONG AND ROSEANNA J. STRONG**, to and in favor of **LONE STAR MORTGAGE, INC.**, upon the following described property situated in ROSS County, State of Ohio:
Property Address: 230 INDEPENDENCE DRIVE, CHILLICOTHE, OH 45601

**See exhibit "A" attached hereto and made a part hereof.**

such Mortgage having been given to secure payment of **One Hundred Thirty Six Thousand  and 00/100ths ($136,000.00)**, which Mortgage is of record in Book, Volume or Liber No. 202, at Page 1823-1841 (or as No. 200200002234), in the Office of the County Clerk of ROSS County, State of Ohio.

TO HAVE AND TO HOLD, the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

Contact Federal National Mortgage Association for this instrument c/o Seterus, Inc., 14523 SW Millikan Way, #200, Beaverton, OR 97005, telephone #1-866-570-5277, which is responsible for receiving payments.

―――――――――――――――――――――――――――――――――――――――――

Ohio Assignment of Mortgage
JPMorgan Chase Bank N.A. Project W2876          Page 1 of 3          L73108OH 01/12 Rev. 02/14

2002-2234 ✓

BK:   465 PG:  406

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on

Assignor:
**JPMorgan Chase Bank, N.A., S/B/M Chase
Home Finance LLC**

By: _____

Its: _____

### ACKNOWLEDGMENT

State of Louisiana          §
                           §
Parish of Ouachita         §

On _____ this _____ day of _____, before me appeared
_____, to me personally known, who, being by
me duly sworn (or affirmed) did say that he/she is the _____, of **JPMorgan Chase
Bank, N.A., S/B/M Chase Home Finance LLC**, and that the seal affixed to said instrument is the corporate seal of
said national association and that the instrument was signed and sealed on behalf of the national association by
authority of its board of directors and that _____
acknowledged the instrument to be the free act and deed of the national association.

Signature of Person Taking Acknowledgment

*Y. K. Wilson*

*Y. K. Wilson
Notary Public #064399
Ouachita Parish, LA
Lifetime Commission*

Printed Name

*Notary Public*

Title or Rank

Serial Number, if any:  *NA*

(Seal, if any)          My Commission Expires:  *Lifetime*

Ohio Assignment of Mortgage
JPMorgan Chase Bank N.A. Project W2876          Page 2 of 3          L73108OH 01/12 Rev. 02/14

BK:   465 PG: 407

——————————————[*Space Below This Line For Prepared by Information*]——————————————

This instrument was prepared by:
**PEIRSONPATTERSON, LLP**
**13750 OMEGA ROAD**
**DALLAS, TX 75244-4505**

Ohio Assignment of Mortgage
JPMorgan Chase Bank N.A. Project W2876          Page 3 of 3                    L73108OH 01/12 Rev. 02/14

BK:  465 PG: 408

EXHIBIT "A"

File Number  02-045

Situated  in  the  City  of  Chillicothe,  County  of  Ross  and  State  of  Ohio:

Apartment  Unit A of building No. 5 (also known as 230 Independence Drive),
including  the exclusive use of garage space designated 4-D, The Governor's
Place Condominium, Phase III,  a  condominium, according to that certain
declaration  of  Condominium  recorded  in  Deed  Book  396,  Page  422,  and
condominium  Record  1,  Page 83 of the Public Records of Ross County, Ohio;
as  amended,  from  time  to  time,  and  filed with the Public Records of Ross
County, Ohio, as follows:

Addendum,  recorded  in  Deed  Book 401, Page 267 and condominium Record 1,
Page 157;

Amendment,  recorded  in  Deed  Book 401, Page 663 and condominium Record 1,
Page 186, of the Public Records of Ross County, Ohio;

Amendment,  recorded  in Deed Book 405, Page 721, and condominium Record 1,
Page  192  (as re-recorded in Deed Book 406, Page 13 and condominium Record
1, Page 199);

Amendment,  recorded  in  Deed Book 410, Page 53, and condominium Record 1,
Page 206.

Amendment,  recorded  in  Deed  Book 410, Page 76, and Condominium Record 1,
Page 229;

Together  with  all  interest and right appurtenant thereto, but Subject to
the terms  and provisions of the aforementioned Declaration of Condominium.

Address:  230 Independence Drive
          Chillicothe, Ohio 45601

Parcel Number:  30-51924000

201400008041
PIERSONPATTERSON LLP
13750 OMEGA RD.
DALLAS TX 75244

Page 1 of 1



MERIDIAN
ASSET SERVICES









BK:  517 PG: 1209

201800000625
Filed for Record in
ROSS COUNTY, OH
KATHY DUNN, RECORDER
01-29-2018 At 01:34 pm.
ASSGN        44.00
OR Volume    517 Page 1209 - 1211

M/E O.R. Vol. 202  Pg. 1823
M/E O.R. Vol. 435  Pg. 2242

When Recorded Return To:
Fannie Mae
C/O Nationwide Title Clearing, Inc. 2100
Alt. 19 North
Palm Harbor, FL 34683



## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, FEDERAL NATIONAL MORTGAGE ASSOCIATION, WHOSE ADDRESS IS 14221 DALLAS PARKWAY, SUITE 1000, DALLAS, TX 75254, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Mortgage together with all interest secured thereby, all liens, and any rights due or to become due thereon to MTGLQ INVESTORS, L.P., A DELAWARE LIMITED PARTERSHIP, WHOSE ADDRESS IS 6011 CONNECTION DR., IRVING, TX 75039, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Mortgage was executed by: CHARLES F. STRONG AND ROSEANNA J. STRONG to LOAN STAR MORTGAGE, INC. and recorded in Vol 202, Page 1823 and Instrument # 200200002234 in the office of the Recorder of ROSS County, Ohio.

Modification: DATE 01/14/2013, BK 435, PG 2242, INST 201300000422.

More particularly described as follows (if needed), to wit:
SEE ATTACHED EXHIBIT A

IN WITNESS WHEREOF, the undersigned has hereunto set its hand by its proper officer on 12 / 18 /2017 (MM/DD/YYYY).
FEDERAL NATIONAL MORTGAGE ASSOCIATION, by NATIONWIDE TITLE CLEARING, INC., its Attorney-in-Fact

By: _____
Jessica Reaves    VICE PRESIDENT

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

NTC Order # 398700915
Meridian Loan # 27535694
Fannie Mae Loan # 1680332133



BK:   517 PG: 1210

STATE OF FLORIDA
COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on 12 / 18 /2017 (MM/DD/YYYY), by Jessica
Reaves as VICE PRESIDENT of NATIONWIDE TITLE CLEARING, INC. as Attorney-in-Fact for FEDERAL
NATIONAL MORTGAGE ASSOCIATION, who, as such VICE PRESIDENT being authorized to do so,
executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to
me.

Sheilah Morris
Notary Public - State of FLORIDA
Commission expires: 10/13/2020

SHEILAH MORRIS
Notary Public - State of Florida
My Commission #GG 38533
Expires October 13, 2020



BK:   517 PG: 1211

## Exhibit A

EXHIBIT A

LEGAL DESCRIPTION

File Number 02-045

Situated in the City of Chillicothe, County of Ross and State of Ohio:

Apartment Unit A of building No. 5 (also known as 230 Independence Drive),
including the exclusive use of garage space designated 4-D, The Governor's
Place Condominium, Phase III, a condominium, according to that certain
declaration of Condominium recorded in Deed Book 396, Page 422, and
condominium Record 1, Page 83 of the Public Records of Ross County, Ohio;
as amended, from time to time, and filed with the Public Records of Ross
County, Ohio, as follows:

Addendum, recorded in Deed Book 401, Page 267 and condominium Record 1,
Page 157;

Amendment, recorded in Deed Book 401, Page 663 and condominium Record 1,
Page 186, of the Public Records of Ross County, Ohio;

Amendment, recorded in Deed Book 405, Page 721, and condominium Record 1,
Page 192 (as re-recorded in Deed Book 406, Page 13 and condominium Record
1, Page 199);

Amendment, recorded in Deed Book 410, Page 53, and condominium Record 1,
Page 206.

Amendment, recorded in Deed Book 410, Page 76, and Condominium Record 1,
Page 229;

Together with all interest and right appurtenant thereto, but Subject to
the terms and provisions of the aforementioned Declaration of Condominium.

Address:   230 Independence Drive
           Chillicothe, Ohio 45601

Parcel Number:   30-51924000

201800000625
NATIONWIDE TITLE CL
2100 ALT 19
PALM HARBOR FL 34683-9820

201900000708        02/01/2019  2:53PM
Filed for Record in ROSS County, OH
Kathy Dunn, Recorder  Rec Fees: $52.00
ASGN    OR Vol 530 Pgs 4457 - 4457
ERECORDING

This space for Recorder's use

| Recording Requested By: | When recorded mail to: |
|---|---|
| Prepared By:<br>Audrey B Trumble<br>855-369-2410<br>3001 Hackberry Rd<br>Irving, TX 75063 | |

Property Address:
230 INDEPENDENCE DRIVE
CHILLICOTHE, OH 45601

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is 2001 Ross Avenue, Suite 2800, Dallas, TX 75201 does hereby grant, sell, assign, transfer and convey unto U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CHALET SERIES III TRUST whose address is 7114 E Stetson Dr., Suite 250, Scottsdale, AZ 85251 all beneficial interest under a certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

Mortgagee:         LOAN STAR MORTGAGE, INC
Borrower(s):       CHARLES F. STRONG AND ROSEANNA J. STRONG, HUSBAND AND WIFE
Date of Mortgage:  2/7/2002
Original Loan Amount:  $136,000.00
Recorded in ROSS County, OH on: 2/12/2002, book OR 202, page 1823 and instrument number 200200002234

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on
~~JAN 0 9 2019~~

MTGLQ INVESTORS, L.P.

By: _____
Biff Rogers, Vice President

State of TX, County of Dallas

On   JAN 0 9 2019  before me, ___Danielle Bolin___, a Notary Public, personally appeared Biff Rogers, Vice President of MTGLQ INVESTORS, L.P. personally known to me to be the person(s) whose name(s) is/are subscribed to the within document and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the document the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

DANIELLE BOLIN
Notary Public, State of Texas
Comm. Expires 11-11-2019
Notary ID 130437026

Notary Public: ___Danielle Bolin___
My Commission Expires :   NOV 1 1 2019

**Meridian Asset Services**
**3201 34TH STREET SOUTHSUITE 310**
**SAINT PETERSBURG, FL  33711**

**Inst #201900000708**

Prepared By and Return To:

Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

```
201900004834        07/19/2019  4:04PM
Filed for Record in ROSS County, OH
Kathy Dunn, Recorder  Rec Fees: $32.00
ASGN    OR Vol 534 Pgs 770 - 771
ERECORDING
```

_____ Space above for Recorder's use _____

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF CHALET SERIES III TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251,** (ASSIGNOR), does hereby grant, assign and transfer to **U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE LODGE SERIES III TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251,** (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: **2/7/2002**
Original Loan Amount: **$136,000.00**
Executed by (Borrower(s)): **CHARLES F. STRONG & ROSEANNA J STRONG**
Original Lender: **LOAN STAR MORTGAGE, INC.**
Filed of Record: In Book/Liber/Volume 202, Page **1823**
Document/Instrument No: **200200002234** in the Recording District of **ROSS, OH**, Recorded on **2/12/2002.**

Property more commonly described as: **230 INDEPENDENCE DRIVE, CHILLICOTHE, OHIO 45601**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: 7/3/2019

**US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF CHALET SERIES III TRUST, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**

By: **MATTHEW KRUEGER**
Title: **VICE PRESIDENT**

Witness Name: **JASON MURCH**

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of **FLORIDA**
County of **PINELLAS**

On 7/3/2019, before me, **RYAN M. MAUCK**, a Notary Public, personally appeared **MATTHEW KRUEGER, VICE PRESIDENT** of/for **MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF CHALET SERIES III TRUST**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify MATTHEW KRUEGER, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): **RYAN M. MAUCK**
My commission expires: 1/16/2022

RYAN M. MAUCK
Commission # GG 175956
Expires January 16, 2022
Bonded Thru Budget Notary Services

Meridian Asset Services
3201 34TH STREET SOUTHSUITE 310
SAINT PETERSBURG, FL 33711

Inst #201900004834